IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LORAINE FRANKLIN, JR., <br> *Plaintiff,* <br> v. <br> FLOWSERVE FSD CORPORATION, <br> *Defendant.* | CASE NO. 6:14-cv-00040 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff Loraine Franklin Jr. filed this action against defendant Flowserve US, Inc. ("Flowserve"), incorrectly named by plaintiff as Flowserve FSD Corporation, on October 10, 2014. Franklin alleges that Flowserve, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"), racially discriminated against him when Flowserve terminated[1] and refused to rehire him.[2]

The matter is before the Court upon the parties' cross-motions for summary judgment. On September 28, 2015, the parties filed a Notice of Ripeness and "agree[d] that [the motion] is appropriate for decision without oral argument . . . ." *See* Notice of Ripeness Concerning Def.'s Mot. Summ. J, docket no. 27. The Court accordingly dispensed with oral argument.[3]

---

[1] I have reconsidered my December 11, 2014, finding that "no such [discrimination claim based on the termination of Franklin's employment] is before the Court." *See* Memorandum Opinion, docket no. 16, at 1 n.1. Franklin contends that he is alleging such a claim in this lawsuit, *see* Pl.'s Compl. ¶ 38–42; *see also* Dep. Loraine Franklin, Jr. 73:3–7, and both parties have, notwithstanding my December 11 finding, briefed and argued Franklin's termination claim. Moreover, so as to avoid any prejudice, I have liberally construed the parties' arguments regarding Franklin's discriminatory termination claim. I will, therefore, consider the merits of Franklin's claim.

[2] Franklin initially asserted retaliation claims against Flowserve under Title VII, Section 1981, and the National Labor Relations Act. Believing the claims to lack merit, Franklin withdrew them. *See* Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 2 n.2. Those claims are, accordingly, dismissed.

[3] Although on its face the Notice of Ripeness only stipulates that Flowserve's motion for summary judgment is ripe and appropriate for decision without oral argument, Franklin's cross-motion for summary judgment raises no issues not presented in defendant's motion for summary judgment. At any event, the Court's pretrial order establishes a

For the following reasons, I will grant defendant Flowserve's motion for summary judgment, and will deny plaintiff Franklin's cross-motion for summary judgment.

## I. FACTUAL BACKGROUND

### A. Franklin's Employment with Flowserve

In June 2008, Flowserve hired Franklin, an African-American individual, as a material handler. Dep. Loraine Franklin, Jr. 15:9–18. Flowserve laid Franklin off in June 2009 as part of a reduction in work force, but rehired Franklin, again as a material handler, in August 2010. *Id.* at 17:6–16. As a material handler, Franklin was required to, *inter alia*: pack, label, and ship units and parts; load trucks; maintain a clean and orderly work area; and perform various tasks as directed by his supervisor. *Id.* at 15:19–25.

In 2010, Flowserve provided Franklin with Flowserve's Code of Business Conduct ("Code") and with the U.S. Work Rules & Conduct Policy ("Work Rules"). *Id.* at 18:7–10, 19:15–20. The Code prohibits "[v]iolence in the workplace," defined as "threats of violence, bodily harm or physical intimidation," *see* Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. 1, at 8, and Franklin understood that compliance with the Code was a term and condition of his continued employment. Dep. Loraine Franklin, Jr. 19:8–11, 18:17–23. The Work Rules provide that fighting or attempting to fight another person or attempting to cause physical injury to another person is in violation of the Work Rules and will subject an employee to disciplinary action. *Id.* at 19:15–20, 22:20–25, 23:1.[4]

---

deadline for hearing dispositive motions of 45 days before trial. *See* docket no. 9. Trial is scheduled in this case for November 17, 2015, and so the 45 day deadline has passed. The Court will therefore also dispense with oral argument on Franklin's cross-motion for summary judgment.

[4] The Work Rules also provide that making false or deceptive statements to supervisors is prohibited and will subject an employee to disciplinary action. Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Attach. 1, Ex. 7, at 1.

### B. Franklin Confronts and Strikes a Coworker

On Friday, September 16, 2011, Franklin was in a bathroom stall at Flowserve. Dep. Loraine Franklin, Jr. 34:14–16. While Franklin was standing in the bathroom stall, an individual approached Franklin from behind and struck Franklin in his lower back area. *Id.* at 34:16–18, 36:6–9. The strike caused Franklin to lose his balance momentarily, but did not cause him to fall down or to bruise. *Id.* at 36:19–24.

On the following Monday, September 19, Franklin, suspecting coworker Tony Evans of striking him the previous Friday, approached and confronted Evans about the incident. *Id.* at 37:23–38:8. Franklin asked Evans why Evans struck him. Evans denied touching Franklin, Franklin "lost it," and Franklin, with his fist, struck Evans in the face, knocking him to the ground, causing his face to swell, and damaging his tooth. *Id.* at 38:1–24, 39:12–14. Evans did not retaliate or strike Franklin in return. *Id.*

### C. Flowserve's Investigation of the Incident and Termination of Franklin's Employment

On the same day Franklin struck Evans, Franklin met with Alice Chicoine, Flowserve's Human Resource Manger, along with other individuals, about the incident. Dep. Loraine Franklin, Jr. 46:18–24. During the meeting, Franklin admitted that he approached and confronted Evans and that Evans denied striking Franklin in the bathroom. Franklin also admitted to striking Evans's face. *Id.* at 46:25–47:14. Franklin conceded to Chicoine that striking someone in the face constitutes workplace violence under Flowserve's Code, and admitted he knew that this constituted workplace violence before he struck Evans. *Id.* at 45:13–20.

After meeting with Franklin and several witnesses to the incident, Flowserve resolved to terminate Franklin's employment with Flowserve, ostensibly "because [Franklin] hit a coworker

- 3 -

Case 6:14-cv-00040-NKM-RSB Document 35 Filed 11/05/15 Page 3 of 19 Pageid#: 397

in the face, committing workplace violence." Decl. Lynn White ¶ 3. On September 20, 2011, one day after the incident between Franklin and Evans, Chicoine advised Franklin that his employment with Flowserve was terminated because Franklin struck Evans in his face. Dep. Loraine Franklin, Jr. 60:9–17. On the following day, Alfreda Dixon,[5] Human Resource Representative with Flowserve, accessed Flowserve's internal database and designated Franklin as ineligible for rehire because Franklin's employment was terminated for committing workplace violence. Decl. Alfreda Dixon ¶ 4; Br. Supp. Def.'s Mot. Summ. J., Attach 1, Ex. 3, at 1–2.

### D. Flowserve's Refusal to Rehire Franklin

In 2013, approximately two years after Flowserve terminated Franklin's employment, Franklin applied for ten positions with Flowserve. Dep. Loraine Franklin, Jr. 71:21–25. Those positions included: two precision assembler positions; six material handler positions; one inventory control clerk position; and one industrial painter position. Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. D.

Flowserve hired Lamont Matthews, an African-American, for one of the precision assembler positions. Decl. Alfreda Dixon ¶ 7. Flowserve hired Aron Lucadamo for the other precision assembler position. Flowserve claims Lucadamo was hired because he was an existing employee who expressed an interest in the position and was therefore awarded the position pursuant to a union agreement with the International Association of Machinists and Aerospace Workers, Local Lodge #10. *Id.* at ¶ 8.[6]

---

[5] Flowserve notes that Dixon is African-American. Decl. Alfreda Dixon ¶ 4.

[6] The agreement, styled as "Agreement Between Flowserve Corporation and Local Lodge #10 International Association of Machinists and Aerospace Workers," provides that "[w]hen a permanent job vacancy occurs, the Company will provide senior employees in the same Labor Grade and within the same Focus Factory/Department, but working on another shift, the opportunity to change shift by sign up sheet." *See* Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. 4.

For the material handler positions, Flowserve hired Charles Blankinship, Kevin Coles, Kenneth Cyrus, John Montgomery, Timothy Hardy, and Jonathan Navarro. Flowserve notes that Coles is African-American. *Id.* at ¶ 9.

Flowserve hired Corey Goff for the inventory control clerk position. *Id.* at ¶ 10. Flowserve did not consider anyone for, or hire anyone to fill, the industrial painter position. Instead, Flowserve cancelled the job posting as a cost-saving measure. *Id.* at ¶ 6.

Flowserve asserts that it did not consider Franklin for the two precision assembler positions, the six material handler positions, or the inventory control clerk position because Franklin was designated as ineligible for rehire in Flowserve's internal database.[7] *Id.* Neither Matthews, Lucadamo, Blankinship, Coles, Cyrus, Montgomery, Hardy, Navarro, nor Goff were coded in Flowserve's system as ineligible for hire at the time they were hired. *Id.* Moreover, Flowserve was not aware that any of the above-named individuals hired for the positions for which Franklin applied ever struck a coworker in the face or otherwise committed workplace violence. *Id.*

### E. James Erdly's Interaction with Corey Steele[8]

On April 24, 2013, James Erdly, a white male hired by Flowserve in May 2011 as general manager of operations, approached Corey Steele, a material handler, because Steele was standing outside of his designated work area. Dep. Cory Steele 11:10–17; Dep. Stewart D. Pennix 13:13–24; Dep. James Edward Erdly 8:24–9:5. Although there is some doubt about what exactly occurred between Erdly and Steele, the briefs, depositions, and discovery materials show that, at

---

[7] For reasons that will be fully stated, *infra* Section IV.C., Franklin claims that Flowserve's avowed reason is pretextual.

[8] Although Erdly's interaction with Steele is not directly related to the incident between Plaintiff and Evans or Franklin's subsequent job applications to Flowserve, Plaintiff contends that Flowserve's treatment of Erdly evinces disparate treatment between Plaintiff and Erdly.

- 5 -

most, Erdly placed his hands on Steele's shoulders, turned him around towards his work area, asked him to return to his work area, and pushed or shoved him in the direction of his work area at least once.[9] Dep. Cory Steele 11:20–24; Dep. Stewart D. Pennix 13:16–14:2.

After the incident, Steele filed a grievance against Erdly with the local union. Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Attach. 1, Ex. 1. In response to the filing of Steele's grievance, Flowserve undertook an investigation of the incident and, on April 25, 2013, Chicoine and Dixon interviewed Erdly regarding the grievance. Opp'n Def.'s Mot. Summ. J., Attach. 1, Ex. 3. At the meeting, Erdly admitted that he "touched [Steele] on his shoulders from behind, turned [Steele] around and told him he needed to go back to his workstation," but denied pushing or shoving Steele. Opp'n Def.'s Mot. Summ. J., Attach. 1, Ex. 3, at 1–2. On April 30, Erdly again met with Chicoine and Dixon. Erdly revised his comments from the April 25 meeting that he "turned [Steele] around," and instead stated that, while he "did . . . put his hands on [Steele's] shoulders and told him to go back to work," Erdly did not forcibly turn Steele. Def.'s Mot. Summ. J., Attach. 1, Ex. 5, at 1.

On April 30, Chicoine and Dixon met with Mason Hudson, an assembler at Flowserve, and Stewart Pennix, an hourly employee at Flowserve. Hudson, who had witnessed the incident recounted that Erdly "grabbed [Steele] by the shoulder . . . turned him 90' and pushed him." Def.'s Mot. Summ. J., Attach. 1, Ex. 9, at 1. Hudson stated that the incident made him feel "embarrassed . . . awkward . . . uncomfortable and in a daze." *Id.* Pennix, who "witnessed the incident from start to end," stated that Erdly "told [Steele] to get back in his work area," that

---

[9] Flowserve emphasizes that, for the purposes of this case, only what Flowserve knew when investigating and handling the incident is relevant. For instance, Steele, in his deposition, stated that Erdly shoved him "three or four times," Dep. Cory Steele 22:5–8. Flowserve notes, however, that Steele did not report to Flowserve that Erdly pushed him in the back three or four times. Def.'s Reply Supp. Mot. Summ. J. and Resp. Pl.'s Cross Mot. Summ. J. 7.

Erdly "turned [Steele] around," and that Erdly "pushed [Steele]." Def.'s Mot. Summ. J., Attach. 1, Ex. 10, at 1.

On May 1, 2013, Chicoine and Dixon, this time accompanied by Lynn White, Flowserve's General Manger, met with Pennix, Steele, and Erdly about the incident. Pennix, when asked if Erdly pushed Steele in a violent manner, responded that "the push was forceful." Def.'s Mot. Summ. J., Attach. 1, Ex. 11, at 1. Steele, when asked to describe how Erdly had pushed him, stated that the push was "real forceful." Def.'s Mot. Summ. J., Attach. 1, Ex. 12, at 1. Erdly, when questioned about the incident, admitted putting his hands on Steele's shoulders, but again denied pushing Steele or turning Steele. Def.'s Mot. Summ. J., Attach. 1, Ex. 14, at 1. When asked by Chicoine why he touched Steele, Erdly "said it was a normal reflex." *Id.*

On May 8, 2013, White issued a "Final Written Warning" (the "Warning") to Erdly regarding the Steele incident. Def.'s Mot. Summ. J., Attach. 1, Ex. 15, 1. The Warning found that "[Erdly] placed [his] hands on an hourly employee's shoulders in an effort to have them return to their work area." *Id.* The Warning described Erdly's behavior as "unprofessional and unacceptable," and remarked that it "fell short of the standard that . . . managers must display." *Id.* The Warning further stated that "[i]t is never acceptable to use physical means or other harassing behavior in managing any of our employees." *Id.* The Warning did not, however, conclude that Erdly had violated the Code's prohibition against violence or harassment in the workplace.

### F. Franklin's Charges of Discrimination with the Equal Employment Opportunity Commission

Franklin filed two charges of discrimination against Flowserve with the Equal Employment Opportunity Commission ("EEOC"). On November 14, 2011, Franklin filed his

first Charge of Discrimination ("First Charge") alleging that Flowserve's termination of Franklin's employment constituted race discrimination under Title VII. Dep. Loraine Franklin, Jr. 65:12–22; Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. B. On July 24, 2012, the EEOC issued a Dismissal and Notice of Rights concerning the First Charge. Dep. Loraine Franklin, Jr. 66:5–67:5; Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. C.

On November 20, 2013, Franklin filed a second Charge of Discrimination ("Second Charge") alleging, *inter alia*, that Flowserve (a) refused to rehire Franklin in retaliation for Franklin's First Charge of discrimination and that (b) Flowserve racially discriminated against Franklin when he reapplied for positions with Flowserve. Dep. Loraine Franklin, Jr. 67:9–15; Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. D. On July 10, 2014, the EEOC issued a Notice of Right to Sue with regard to the Second Charge. Pl.'s Compl. ¶ 3; Def.'s Answer ¶ 3.

Franklin filed suit in this Court on October 10, 2014.

## II.  STANDARD OF REVIEW

Summary judgment is warranted if the Court concludes that no genuine issue of material fact exists for trial and that the moving party is entitled to judgment as a matter of law, based on the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits. *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013) (citing Fed. R. Civ. P. 56). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To demonstrate that a genuine issue of material fact exists, a party may not rest upon his own mere allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the party must "proffer[] sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d

- 8 -

Case 6:14-cv-00040-NKM-RSB   Document 35   Filed 11/05/15   Page 8 of 19   Pageid#: 402

1310, 1316 (4th Cir. 1993). To this end, a district court has an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III.  TITLE VII AND SECTION 1981 LEGAL STANDARD

Franklin alleges that Flowserve, in violation of both Title VII and Section 1981, discriminated against him based on his race when Flowserve terminated Franklin and when Flowserve refused to rehire Franklin.

"Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's' . . . [race]". *Gerner v. Cnty. of Chesterfield, Virginia*, 674 F.3d 264, 266 (2012) (citing 42 U.S.C. § 2000e-2(a)). Section 1981 also offers protection, and "outlaws race discrimination in the making and enforcement of private contracts." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 256 (4th Cir. 2001). In pertinent part, Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute extends to the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Murrell*, 262 F.3d at 257; *see also* 42 U.S.C. § 1981(b).

In evaluating Title VII and Section 1981 claims, courts apply the same legal framework. *See, e.g.*, *Clement v. Satterfiled*, 927 F. Supp. 2d 297, 305 (W.D. Va. 2013) (citing *Gairola v. Virginia Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985) and *Middlebrooks v. Univ. of Maryland*, No. 97–2473, 1999 WL 7860, at *4 (4th Cir. Jan. 11, 1999) (per curiam)) ("In analyzing claims under § 1981, courts employ the familiar Title VII proof standards."); *see also Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002) (recognizing that

the elements of a discrimination claim are the same under both Title VII and § 1981). A plaintiff can prove discrimination through either direct evidence or through the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Washington v. Kroger Ltd. P'ship I*, No. 3:11–cv–00074, 2012 WL 6026138, at *3 (W.D. Va. Dec. 4, 2012) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)).

If a plaintiff lacks direct evidence of discrimination, he must rely on the framework articulated in *McDonnell Douglas*.[10] Under *McDonnell Douglas*, the aggrieved party must first establish a *prima facie* case of discrimination. *See Texas Dept. of Cnty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). Third and finally, if the defendant carries this burden, "the plaintiff must then . . . prove by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804).

A *prima facie* case of discriminatory termination differs, if only slightly, from a *prima facie* case of discriminatory refusal to hire. To establish a *prima facie* case of discriminatory termination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was terminated; and (4) other employees not members of the protected class were retained under apparently similar

---

[10] Franklin has adduced no direct evidence of discrimination and has instead attempted to prove his case using the *McDonnell Douglas* framework.

circumstances. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citing *Bryant*, 288 F.3d at 133 n.7 and *Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1228 (4th Cir. 1998)) (articulating Section 1981 *prima facie* case); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (articulating Title VII *prima facie* case, which is identical).[11]

To establish a *prima facie* case of discriminatory hiring, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position for which he applied; and (4) he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. *See Weathers v. Univ. of N. Carolina at Chapel Hill*, 447 Fed. Appx. 508, 510 (4th Cir. 2011); *see also Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (citation omitted); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also Lockheed Martin*, 354 F.3d at 285 (noting that if the aggrieved party satisfies its burden, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.").

If the defendant satisfies this burden, "the burden reverts to the plaintiff to establish that the [defendant's] non-discriminatory rationale is a pretext for intentional discrimination." *Heiko*

---

[11] Where, like in this case, plaintiff presents evidence that he was fired for conduct which an employee not a member of a protected class engaged in but for which they were not fired, plaintiff is "required to show that they are similar in all relevant respects to their comparator." *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) (citations omitted). "Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks, alterations, and citations omitted).

*v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006). The "plaintiff bears the burden of proving by a preponderance of the evidence that the [defendant's] proffered reason for the termination is a mere pretext for unlawful discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff "can prove pretext by showing that the [defendant's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [racial discrimination]." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

It should be emphasized that "the Court's task is not 'to decide whether the reason [for the adverse employment decision] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision].'" *Mercer v. Arc of Price Georges Cty., Inc.*, 532 Fed. Appx. 392, 399 (4th Cir. 2013) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 723–24 (4th Cir. 2013)). Moreover, courts should remember well that, despite the intricacies of the burden-shifting framework, the ultimate question in every discrimination case is "whether the plaintiff was the victim of intentional discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010).

### IV. DISCUSSION

#### A. Franklin's Title VII Discriminatory Termination Claim Is Time-Barred

A plaintiff alleging a claim of discrimination under Title VII must file suit "no more than ninety days following the EEOC's issuance of his right-to-sue notice . . . ."[12] *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003); see also 42 U.S.C. § 2000e-5(f)(1) (aggrieved party must bring suit "within ninety days after" receiving an EEOC right-to-sue notice). This

---

[12] In order to file a civil action under Title VII, an aggrieved party must first file a charge of discrimination with the EEOC, who may then issue a right-to-sue notice. Only after receipt of the right-to-sue notice may an aggrieved party file in court a Title VII civil action. *See* 42 U.S.C. § 2000e-5; *see also Lewis*, 271 F. Supp. 2d at 811.

ninety-day requirement "operates as a statute of limitations that bars subsequently filed suits." *Lewis*, 271 F. Supp. 2d at 811.

Title VII's timing requirements have been strictly construed and applied within the Fourth Circuit. *See, e.g.*, *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987) (suit filed ninety-one days after notice barred); *Boyce v. Fleet Finance Inc.*, 802 F. Supp. 1404, 1410–12 (E.D. Va. 1992) (suit filed ninety-two days after notice barred); *see also Lewis*, 271 F. Supp. 2d 811 (collecting cases).

Parties sometime dispute the date on which Title VII's timing requirements attach. If the actual date of receipt is confirmed by evidence, that date governs. *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 WL 556446, at *3 (4th Cir. July 30, 1999); *Dixon v. Dig. Equip. Corp.*, No. 92-1483, 1992 WL 245867, at *1 (4th Cir. Sept. 30, 1992); *Williams v. Enter. Leasing Co. of Norfolk/Richmond*, 911 F. Supp. 988, 991–92 (E.D. Va. 1995). "If the date is unknown, however, it is presumed that service by regular mail is received within three days pursuant to [Rule 6(d)] of the Federal Rules." *Nguyen*, 1999 WL 556446, at *3; *see also* Fed. R. Civ. P. 6(d).

Franklin filed his first Charge of Discrimination with the EEOC on November 14, 2011. Dep. Loraine Franklin, Jr. 65:12–22; Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. B. The EEOC issued a Dismissal and Notice of Rights concerning this charge on July 24, 2012. Dep. Loraine Franklin, Jr. 66:5–67:5; Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. C. Franklin is presumed to have received the EEOC's notice no later than July 27, 2012. *See Nguyen*, 1999 WL 556446, at *3; *see also* Fed. R. Civ. P. 6(d). Franklin had ninety days after July 27, 2012, in which to file suit. Franklin did not file suit in this Court, however, until October 10, 2014, over

two years later. Franklin's Title VII claim alleging that Flowserve discriminatorily terminated Franklin is therefore time-barred and must be dismissed.

### B.   Section 1981 Discriminatory Termination Claim

Franklin claims that Flowserve discriminatorily terminated him in violation of Section 1981. To establish a *prima facie* case of discriminatory termination, Franklin must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was terminated; and (4) other employees not members of the protected class were retained under apparently similar circumstances. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citing *Bryant*, 288 F.3d at 133 n.7 and *Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1228 (4th Cir. 1998)) (articulating Section 1981 *prima facie* case). Franklin has failed to establish a *prima facie* case of discriminatory termination because no reasonable jury could conclude that (1) Franklin's job performance was satisfactory at the time he was fired or that (2) a similarly situated employee engaged in similar conduct but was retained

Franklin argues that "until Franklin . . . struck a fellow coworker, he clearly [met] Flowserve's legitimate expectations regarding his work performance." Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 12. Franklin's argument misses the point. The relevant inquiry is whether, at the time Franklin was fired, his job performance was satisfactory, including and considering Franklin's assault on Evans. *See Pettis v. Nottoway Cty. Sch. Bd.*, 592 Fed. Appx. 158, 160 (4th Cir. 2014); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Flowserve had in place two policies against workplace violence, and Franklin flagrantly violated those policies by punching a coworker in the face.[13] Irrespective of Franklin's job performance

---

[13] Indeed, Franklin admits that striking a coworker constitutes workplace violence. *See* Dep. Loraine Franklin, Jr. 45:21–24.

- 14 -

prior to the September 16 incident, when Franklin struck his coworker in the face, he was no longer adequately performing his job.

Franklin has likewise failed to show that other employees who were not members of the protected class were retained even though they engaged in similar prohibited conduct. Franklin was fired for committing workplace violence. Franklin claims that Erdly, a white employee, also engaged in workplace violence but was not fired. In order to make this argument, Franklin must show that he is "similar in all relevant respects to [his] comparator" who, in this case, is Erdly. *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) (citations omitted). "Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks, alterations, and citations omitted). No reasonable jury could find that Franklin and Erdly are similar in all relevant respects.

First, no reasonable jury could conclude that Franklin and Erdly engaged in similar conduct. Franklin must show that "the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class." *Tabor v. Freightliner of Cleveland, LLC*, 388 Fed. Appx. 321, 322 (4th Cir. 2010) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 501, 511 (4th Cir. 1993)). In determining whether conduct is comparable, "comparison can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender." *Tabor*, 388 Fed. App'x. at 322.

Erdly's conduct is simply not comparable in seriousness to Franklin's misconduct. Erdly was arguably acting within the scope of his managerial authority when he approached Steele, in

- 15 -

Case 6:14-cv-00040-NKM-RSB   Document 35   Filed 11/05/15   Page 15 of 19   Pageid#: 409

that his intention was to persuade Steele to return to his workspace. Franklin, on the other hand, intended only to harm Evans and to retaliate against him. Franklin's culpability is therefore not comparable to Erdly's. Moreover, the harm Franklin caused is not comparable to the harm, if any, that Erdly caused. Franklin punched Evans in the face, knocking him to the ground, causing him to lose part of his tooth, and causing Evan's face to swell. *See* Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. 5. Erdly caused Steele no harm. At worst, Erdly touched Steele's shoulders, forcefully turned him in the direction of his workspace, and pushed him three or four times. *See* Pl.'s Reply Mem. To Def.'s Opp'n Cross-Mot. Summ. J., Attach. 1. The push "wasn't hard enough to push [Steele] down on the floor," and Steele did not "fe[el] he was in any danger." Br. Supp. Def.'s Mot. Summ. J., Attach. 1, Ex. 6.[14]

Second, no reasonable jury could conclude that Erdly and Franklin are similarly situated. "Similarly situated employees are alike with respect to performance . . . [and] qualifications . . . ." *Popo v. Giant Foods, LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009) (internal quotation marks omitted). Franklin was a material handler. As a material handler, Franklin was an hourly employee who had no supervisory authority. Erdly held the position of Operations Manager and had supervisory authority, including over Franklin. "A supervisor and his subordinates are, by definition, not alike in qualifications." *Id.* (citing *Trust v. Maryland*, 28 Fed. Appx. 327, 329 (4th Cir. 2002)). Franklin has thus failed to show a dispute of material fact as to whether Franklin and Erdly were similarly situated in qualifications.

For the above reasons, Franklin has failed to show a dispute of material fact as to whether (1) his job performance was satisfactory at the time he was fired or whether (2) a similarly situated employee engaged in similar conduct but was not fired. Franklin has therefore failed to

---

[14] Franklin also asserts that Erdly violated Flowserve policies prohibiting making a false statement to supervisors. Franklin has not, however, pointed to any false statement that Erdly made to his supervisors. At any rate, lying to supervisors is not comparable conduct to striking a coworker in the face.

establish a *prima facie* case of discriminatory termination under Section 1981. Summary judgment must accordingly be granted to Flowserve.

      C.     **Title VII and Section 1981 Discriminatory Refusal to Hire**

Franklin claims that Flowserve discriminatorily refused to hire him in violation of Title VII and Section 1981. To establish a *prima facie* case of discriminatory refusal to hire, Franklin must show that: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position for which he applied; and (4) he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. *See Weathers v. Univ. of N. Carolina at Chapel Hill*, 447 Fed. Appx. 508, 510 (4th Cir. 2011); *see also Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (citation omitted); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). Franklin has failed to establish a *prima facie* case of discriminatory refusal to hire because no reasonable jury could conclude that he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.

Flowserve has offered a neutral, nondiscriminatory reason for refusing to hire Franklin. After being fired for workplace violence, Flowserve designated Franklin as ineligible for rehire. Franklin offers no evidence that Flowserve failed to designate white individuals fired for workplace as ineligible for rehire, or that any of the individuals who were ultimately hired for the positions punched a coworker in the face or committed workplace violence of any kind.

Moreover, Flowserve hired two African-Americans for the positions for which Franklin applied. This fact alone tends to make implausible Franklin's claim that he was discriminated against because of his race. *See, e.g.*, *Sonpon v. Grafton Sch., Inc.*, 181 F. Supp. 2d 494, 501 (D.

- 17 -

Md. 2002) (granting summary judgment to defendant "[g]iven the lack of any evidence calling into doubt [Plaintiff's] stated reasons for failing to [hire] Plaintiff, and in light of the fact that another member of Plaintiff's protected class was hired for the position . . . .").

Franklin presents no real argument that he was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination. Franklin instead argues that Flowserve's stated reason is "pretextual because there is substantial evidence that a similarly situated white employee, James Erdly[,] was treated more favorably than Franklin in that he was not terminated from his position after he violated Flowserve's policies against violence in the workplace and against intentionally making false or deceptive statement[s] to supervisors, managers, or other persons in authority." Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 1–2. This argument fails for two reasons.

First, Franklin's argument goes only to proving that Flowserve's stated reason for refusing to hire him is pretextual. This argument is relevant, however, only after Franklin has established a *prima facie* case of discriminatory refusal to hire. Second, even if I charitably construe Franklin's argument as bearing on his *prima facie* case, it fails. Franklin's firing is a transaction wholly separate from the later transaction of refusing to rehire Franklin. That Flowserve may have disciplined Erdly more favorably in no way impeaches their decision not to rehire Franklin due to his history of workplace violence.

Because Franklin has offered no evidence tending to suggest that Flowserve discriminated against him based on his race when they refused to hire him, and because other African-Americans were hired for the positions for which Franklin applied, there is no dispute of material fact regarding Franklin's Title VII and Section 1981 discriminatory hiring claims. Flowserve is, accordingly, entitled to summary judgment.

## V. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment will be granted. Plaintiff's cross-motion for summary judgment will be denied. An appropriate order will accompany this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ____5th__ day of November, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

- 19 -

Case 6:14-cv-00040-NKM-RSB   Document 35   Filed 11/05/15   Page 19 of 19   Pageid#: 413

## V. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment will be granted. Plaintiff's cross-motion for summary judgment will be denied. An appropriate order will accompany this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ____5th__ day of November, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE